

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, )
)
      Plaintiff, )
)
vs. )    Cr. No. 18-cr-1108-KG
)
TRISTA SCHLAEFLI, )
)
      Defendant. )

## PLEA AGREEMENT

Pursuant to Rule 11, Fed. R. Crim. P., the parties notify the Court of the following

agreement between the United States Attorney for the District of New Mexico, the defendant,

TRISTA SCHLAEFLI, and the defendant's counsel, KEN DEL VALLE:

## REPRESENTATION BY COUNSEL

1.     The defendant understands the defendant's right to be represented by an attorney

and is so represented. The defendant has thoroughly reviewed all aspects of this case with the

defendant's attorney and is fully satisfied with that attorney's legal representation.

## RIGHTS OF THE DEFENDANT

2.     The defendant further understands the defendant's rights:

    a.     to plead not guilty, or having already so pleaded, to persist in that plea;

    b.     to have a trial by jury; and

    c.     at a trial:

        (1)     to confront and cross-examine adverse witnesses,

        (2)     to be protected from compelled self-incrimination,

          (3)     to testify and present evidence on the defendant's own behalf, and

          (4)     to compel the attendance of witnesses for the defense.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

3.     Defendant hereby agrees to waive these rights and to plead guilty to Counts 1, 2,

3, 5, 7, and 9 the Indictment, which charges the following violations: Count 1: High Speed Flight

from an Immigration Checkpoint, in violation of 18 U.S.C. § 758; Count 2: Carjacking, in

violation of 18 U.S.C. § 2119(1); Count 3: Carjacking Resulting in Death, in violation of 18

U.S.C. § 2119(3); Count 5: Aiding and Abetting Brandishing a Firearm During and in Relation

to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); Count 7: Attempted

Carjacking, in violation of 18 U.S.C. § 2119(1); and Count 9: Possession of a Unauthorized

Access Devices, in violation of 18 U.S.C. § 1029(a)(3).

## ELEMENTS OF THE OFFENSES CHARGED

4.     The defendant understands that by signing this plea agreement, she is

acknowledging that she understands the elements of each offense charged, and she agrees that

the government could prove each of the elements beyond a reasonable doubt at trial.

5.     Count 1: High Speed Flight from an Immigration Checkpoint, in violation of 18

U.S.C. § 758: In order to find the defendant guilty, the government must prove the following

beyond a reasonable doubt:

         a.     Defendant fled a checkpoint operated by immigration or naturalization
             services in a motor vehicle;

         b.     In the process, the defendant fled federal, state or local law enforcement
             officials;

         c.     The flight was in excess of the posted speed limit.

2

6.      Count 2: Carjacking, in violation of 18 U.S.C. § 2119(1): In order to find the

defendant guilty, the government must prove the following beyond a reasonable doubt:

      a.      The defendant intentionally took a motor vehicle from a person;

      b.      The defendant did so by means of force and violence, or intimidation;

      c.      The motor vehicle had been transported, shipped, or received in interstate or foreign commerce; and

      d.      The defendant intended to cause death or serious bodily injury.

7.      Count 3: Carjacking Resulting in Death, in violation of 18 U.S.C. § 2119(3): In

order to find the defendant guilty, the government must prove the following beyond a reasonable

doubt:

      a.      The defendant intentionally took a motor vehicle from a person;

      b.      The defendant did so by means of force and violence, or intimidation;

      c.      The motor vehicle had been transported, shipped, or received in interstate or foreign commerce;

      d.      The defendant intended to cause death or serious bodily injury; and

      e.      Someone died a result of the crime.

8.      Count 5: Aiding and Abetting Brandishing a Firearm During and in Relation to a

Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii): In order to find the defendant

guilty, the government must prove the following beyond a reasonable doubt:

      a.      Daniel Lowell brandished a firearm in furtherance of carjacking;

      b.      The defendant intentionally associated herself in some way with the crime and intentionally participated in it as she would in something she wished to bring about;

      c.      The defendant consciously shared Lowell's knowledge of brandishing the firearm in furtherance of the carjacking and intended to help him.

3

9.    Count 7: Attempted Carjacking, in violation of 18 U.S.C. § 2119(1): In order to

find the defendant guilty, the government must prove the following beyond a reasonable doubt:

      a.    The defendant attempted to take a motor vehicle from the presence of
          another;

      b.    The motor vehicle had been transported, shipped, or received in interstate
          or foreign commerce;

      c.    The defendant attempted to take the motor vehicle by the use of force,
          violence, or intimidation.

10.    Count 9: Possession of a Unauthorized Access Devices, in violation of 18 U.S.C.

§ 1029(a)(3): In order to find the defendant guilty, the government must prove the following

beyond a reasonable doubt:

      a.    The defendant knowingly possessed fifteen or more access devices;

      b.    Those devices were unauthorized, i.e. stolen;

      c.    The defendant possessed those devices with the intent to defraud; and

      d.    The defendant's conduct affected interstate commerce.

## SENTENCING

11.    The defendant understands that the minimum and maximum penalty the Court can

impose as to Count 1: High Speed Flight from an Immigration Checkpoint, in violation of 18

U.S.C. § 758 is:

      a.    a term of imprisonment for up to five years;

      b.    a fine not to exceed $250,000;

      c.    a term of supervised release of up to three years to follow any term of
          imprisonment. (If the defendant serves a term of imprisonment, is then
          released on supervised release, and violates the conditions of supervised
          release, the defendant's supervised release could be revoked — even on
          the last day of the term — and the defendant could then be returned to
          another period of incarceration and a new term of supervised release.);

        d.     a mandatory special penalty assessment of $100.00; and

12.    The defendant understands that the minimum and maximum penalty the Court can

impose as to Count 2: Carjacking, in violation of 18 U.S.C. § 2119(1) is:

        a.     a term of imprisonment up to fifteen years;

        b.     a fine not to exceed $250,000;

        c.     a term of supervised release of up to three years to follow any term of imprisonment. (If the defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the defendant's supervised release could be revoked — even on the last day of the term — and the defendant could then be returned to another period of incarceration and a new term of supervised release.);

        d.     a mandatory special penalty assessment of $100.00; and

        e.     restitution as may be ordered by the Court.

13.    The defendant understands that the minimum and maximum penalty the Court can

impose as to Count 3: Carjacking Resulting in Death, in violation of 18 U.S.C. § 2119(3) is:

        a.     a term of imprisonment up life, or death;

        b.     a fine not to exceed $250,000;

        c.     a term of supervised release of up to five years to follow any term of imprisonment. (If the defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the defendant's supervised release could be revoked — even on the last day of the term — and the defendant could then be returned to another period of incarceration and a new term of supervised release.);

        d.     a mandatory special penalty assessment of $100.00; and

        e.     restitution as may be ordered by the Court.

14.    The defendant understands that the minimum and maximum penalty the Court can

impose as to Count 5: Aiding and Abetting Brandishing a Firearm During and in Relation to a

Crime of Violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(ii) is:

5

    a.    mandatory seven years imprisonment and up to life which must be run consecutive to any other sentence imposed;

    b.    a fine not to exceed $250,000;

    c.    a term of supervised release of up to ~~three~~ FIVE years to follow any term of imprisonment. (If the defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the defendant's supervised release could be revoked — even on the last day of the term — and the defendant could then be returned to another period of incarceration and a new term of supervised release.);

    d.    a mandatory special penalty assessment of $100.00; and

    e.    restitution as may be ordered by the Court.

15.    The defendant understands that the minimum and maximum penalty the Court can impose as to Count 7: Attempted Carjacking, in violation of 18 U.S.C. § 2119(1) is:

    a.    a term of imprisonment up to fifteen years;

    b.    a fine not to exceed $250,000;

    c.    a term of supervised release up to three years to follow any term of imprisonment. (If the defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the defendant's supervised release could be revoked — even on the last day of the term — and the defendant could then be returned to another period of incarceration and a new term of supervised release.);

    d.    a mandatory special penalty assessment of $100.00; and

    e.    restitution as may be ordered by the Court.

16.    The defendant understands that the minimum and maximum penalty the Court can impose as to Count 9: Possession of a Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(3) is:

    a.    a term of imprisonment of up to ten years;

    b.    a fine not to exceed $250,000;

      c.     a term of supervised release of up to three years to follow any term of imprisonment. (If the defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the defendant's supervised release could be revoked — even on the last day of the term — and the defendant could then be returned to another period of incarceration and a new term of supervised release.);

      d.     a mandatory special penalty assessment of $100.00.

17.     The parties recognize that the federal sentencing guidelines are advisory, and that the Court is required to consider them in determining the sentence it imposes.

18.     It is expressly understood and agreed by and between the defendant and the United States that:

      a.     The United States has made, and will make, NO AGREEMENT pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a specific sentence is the appropriate disposition of this case.

      b.     The United States has made, and will make, NO AGREEMENT to approve, to oppose, or not to oppose pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), any request made by the defendant or on behalf of the defendant for a particular sentence in this case, other than the stipulations agreed to below.

      c.     The United States hereby expressly reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any information the United States believes may be helpful to the Court, including but not limited to information about the recommendations contained in this agreement and any relevant conduct under U.S.S.G. § 1B1.3.

      d.     Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, the defendant agrees that, upon the defendant's signing of this plea agreement, the facts that the defendant has admitted under this plea agreement as set forth below, as well as any facts to which the defendant admits in open court at the defendant's plea hearing,

7

shall be admissible against the defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the defendant expressly waives the defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the defendant admits in conjunction with this plea agreement.

## DEFENDANT'S ADMISSION OF FACTS

19. By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offenses to which I am pleading guilty. I recognize and accept responsibility for my criminal conduct. Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offenses to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the indictment that increase the statutory minimum or maximum penalties. I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

**Count 1:**

**On November 27, 2017, at approximately 2:15 p.m., I, Trista Schlaefli, was a passenger in a stolen GMC pickup truck that was being driven by my co-defendant, Daniel Lowell. We approached the Border Patrol checkpoint on Interstate 10, at mile marker 120, in Doña Ana County, New Mexico. A border patrol agent questioned Lowell and I about our travel plans and requested Lowell's identification. Lowell told the agent he didn't have any identification. Following a brief conversation, the agent asked Lowell to shut off the vehicle. Rather than follow those instruction, Lowell fled the checkpoint and took off from primary inspection heading westbound on I-10. The posted speed limit on that stretch of I-10 was 75 miles per hour. While Lowell was driving, he fled at speeds in excess of 75 miles and I believe he drove up to 100 miles per hour. I recognize that I am responsible as a principal of the crime because, as part of our flight from the checkpoint, we carjacked a vehicle which I initially drove and I continued to flee the checkpoint at speeds in excess of 75 miles per hour while I was driving.**

8

Counts 2, 3, & 5:

After we fled the checkpoint, one of the tires blew out on the vehicle Lowell was driving. When this occurred, Lowell began driving against traffic on the highway. We saw that a 4-Runner had pulled over and Lowell approached the 4-Runner and was carrying an HK 9mm handgun at that time. Lowell approached the driver of the 4Runner, J.P., and pointed the loaded firearm at his face demanding the vehicle. The 4Runner was occupied by J.P., his wife, and their two minor children in the back seat. I recognize that Lowell's action of pointing a gun at the driver involved him employing threats of violence and intimidation to take the vehicle. I had advance knowledge that Lowell would use or carry the firearm during the carjacking because I had seen him with the firearm on previous occasions and I knew he had the firearm with him on November 27, 2017, when we initially approached the checkpoint. I now know that the occupants of the vehicle were returning to Texas from Arizona, thus, I recognize that the vehicle had recently crossed state lines to be in New Mexico. After Lowell and I carjacked the vehicle, we took off at a high rate of speed. Initially, I was driving but I later pulled over so I could get into the passenger's seat. I recognize that by driving the 4-Runner I am responsible as a principal for the carjacking and I also recognize that I aided and abetted Lowell's brandishing of the firearm in furtherance of the carjacking because I could have withdrawn from the crime at that time, but I chose not to. After Lowell got into the driver's seat, we continued to abscond from police and drove into the city of Las Cruces. We stopped at a Walmart where Lowell stole spark plugs in an effort to continue our flight from law enforcement. Eventually, the pursuit by law enforcement in Las Cruces resumed and law enforcement attempted to stop the vehicle but Lowell continued to flee at high rates of speed in reckless disregard for the vehicles around us. At approximately 5:35 p.m., near the intersection of Sotol and Las Alturas Drive, Lowell hit and struck J.R.S., who was driving a motorcycle. J.R.S. later died as a result of the injuries that he sustained from the impact of the crash. Evidence from the black box in the 4-Runner revealed Lowell was driving 61 miles per hour, in a 45 mph zone, when we struck J.R.S. I recognize that but/for the carjacking of the 4-Runner, J.R.S. would not have died. Thus, his death was the result of the carjacking.

Count 7:

After we struck J.R.S, I fled the 4-Runner in an attempt to continue to abscond from law enforcement. I approached a Toyota Camry being driven by C.O. I began erratically banging on the driver's side door and yelling threating words to try to get the driver out of the vehicle. I recognize that by my actions, demeanor and words, I was employing threats of force and violence against the driver. I now know that Toyota vehicles are manufactured in Kentucky, Alabama, Indiana, Texas, and West Virginia. Thus, I recognize that the vehicle at some point crossed state lines to be present in New Mexico.

**Count 9:**

After I was finally apprehended by law enforcement, they obtained a search warrant to search the stolen GMC truck and the hotel room in Las Cruces where I had been staying. State police found numerous stolen IDs, Social Security Cards, and credit cards. Specifically, law enforcement found fifteen different driver's licenses, nine different social security cards, one military ID, and thirty-one different credit cards. I now know that a credit card qualifies as an access device under the law. Lowell and I had more than fifteen stolen access devices in our possession and they were unauthorized because they were stolen. I recognize that I was using those access devices with the intent to defraud because I knew they did not belong to me. I recognize there was an affect on interstate commerce because I used some of the devices to purchase products and I also acknowledge that Lowell and I drove those stolen access devices across state lines when we came from Colorado to New Mexico.

20.     By signing this agreement, the defendant admits that there is a factual basis for each element of the crime(s) to which the defendant is pleading guilty. The defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the defendant's sentence, including, but not limited to, the advisory guideline offense level.

## STIPULATIONS

21.     The United States and the defendant stipulate as follows:

a.     Pursuant to USSG § 3E1.1(a), the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. Consequently, so long as the defendant continues to accept responsibility for the defendant's criminal conduct, the defendant is entitled to a reduction of two (2) levels from the base offense level as calculated under the sentencing guidelines. This reduction is contingent upon the defendant providing an appropriate oral or written statement to the United States probation officer who prepares the presentence report in this case in which the defendant clearly establishes the defendant's entitlement to this reduction.

10

b. Provided the defendant meets the requirements of USSG § 3E1.1(b), the government agrees to move for a reduction of one (1) additional level from the base offense level as calculated under the sentencing guidelines.

c. Apart from the provisions in this plea agreement, the United States and the defendant reserve their rights to assert any position or argument with respect to the sentence to be imposed, including but not limited to the applicability of particular sentencing guidelines and adjustments under the guidelines.

d. Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, the defendant agrees that, upon the defendant's signing of this plea agreement, the facts that the defendant has admitted under this plea agreement as set forth below, as well as any facts to which the defendant admits in open court at the defendant's plea hearing, shall be admissible against the defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the defendant expressly waives the defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the defendant admits in conjunction with this plea agreement..

## DEFENDANT'S ADDITIONAL AGREEMENT

22. The defendant understands the defendant's obligation to provide the United States Pretrial Services and Probation Office with truthful, accurate, and complete information. The defendant represents that the Defendant has complied with and will continue to comply with this obligation.

23. Except under circumstances where the Court, acting on its own, rejects this plea agreement, the defendant agrees that, upon the defendant's signing of this plea agreement, the facts that the defendant has admitted under this plea agreement as set forth above, as well as any

11

facts to which the defendant admits in open court at the defendant's plea hearing, shall be admissible against the defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the defendant expressly waives the defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the defendant admits in conjunction with this plea agreement.

24.    By signing this plea agreement, the defendant waives the right to withdraw the defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d). The defendant may only withdraw the guilty plea in the event the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5). Furthermore, the defendant understands that if the court rejects the plea agreement, whether or not defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

## RESTITUTION

25.    The parties agree that, as part of the Defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A.

26.    The defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw defendant's guilty plea. The defendant further agrees to comply with any restitution order entered into at the time of sentencing. The defendant further agrees that the defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding. The defendant agrees to make full restitution for the provable losses caused by the defendant's activities. The defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks which will result

12

in immediate payment in full, or payment in the shortest time in which full payment can be reasonably made as required under 18 U.S.C. § 3572(d).

27.     The defendant further agrees to make full and accurate disclosure of her financial affairs to the United States. Specifically, the defendant agrees that, before sentencing, the defendant shall provide to the United States, under penalty of perjury, a financial statement which shall identify all assets owned or held directly or indirectly by the defendant. The defendant shall also identify all assets valued at more than $5,000 which have been transferred to third parties since August 12, 2016, including the location of the assets and the identity of any third party.

28.     The defendant further agrees that whatever monetary penalties are imposed by the Court will be due immediately and will be subject to immediate enforcement by the United States as provided for in 18 U.S.C. § 3613. If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

**FORFEITURE**

29.     The defendant voluntarily and immediately agrees to the administrative, civil, or criminal forfeiture to the United States all of the defendant's right, title, and interest in any seized evidence that is or was an instrumentality of a violation of 18 U.S.C. § 1029(a)(3), or 18 U.S.C. § 2119.

13

30.     The defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to execution of any documents necessary to transfer the Defendant's interest in the above-described property to the United States.

31.     The defendant agrees to waive the right to notice of any forfeiture proceeding involving the above-described property.

32.     The defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of the above-described property.   The defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of said property in any proceeding. The defendant agrees to waive any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of said property by the United States or any State or its subdivisions.

**WAIVER OF APPEAL RIGHTS**

33.     The defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed.   Acknowledging that, the defendant knowingly waives the right to appeal the defendant's conviction(s) and any sentence, including any fine, imposed in conformity with this plea agreement, as well as any order of restitution entered by the Court.   In addition, the defendant agrees to waive any collateral attack to the defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

14

## GOVERNMENT'S ADDITIONAL AGREEMENT

34.     Provided that the defendant fulfills the defendant's obligations as set out above,

the United States agrees not to bring additional criminal charges against the defendant arising out

of the facts forming the basis of the present Indictment.

35.     This agreement is limited to the United States Attorney's Office for the District of

New Mexico and does not bind any other federal, state, or local agencies or prosecuting

authorities.

## VOLUNTARY PLEA

36.     The defendant agrees and represents that this plea of guilty is freely and

voluntarily made and is not the result of force, threats, or promises (other than the promises set

forth in this agreement and any addenda).   The defendant also represents that the defendant is

pleading guilty because the defendant is in fact guilty.

## VIOLATION OF PLEA AGREEMENT

37.     The defendant agrees that if the defendant violates any provision of this

agreement, the United States may declare this agreement null and void, and the defendant will

thereafter be subject to prosecution for any criminal violation, including but not limited to any

crimes or offenses contained in or related to the charges in this case, as well as perjury, false

statement, obstruction of justice, and any other crime committed by the defendant during this

prosecution.

## SPECIAL ASSESSMENT

38.     At the time of sentencing, the defendant will tender to the United States District

Court, District of New Mexico, 333 Lomas Blvd. NW, Suite 270, Albuquerque, New Mexico

15

87102, a money order or certified check payable to the order of the United States District Court

in the amount of $600.00 in payment of the special penalty assessment described above.

## ENTIRETY OF AGREEMENT

39.    This document and any addenda are a complete statement of the agreement in this

case and may not be altered unless done so in writing and signed by all parties.    The parties

agree and stipulate that this agreement will be considered part of the record of defendant's guilty

plea hearing as if the entire agreement had been read into the record of the proceeding.    This

agreement is effective upon signature by the defendant and an Assistant United States Attorney,

and upon entry of a guilty plea by the defendant pursuant to this agreement.

AGREED TO AND SIGNED this __13__ day of __November__ 2018.

JOHN C. ANDERSON
United States Attorney

MARISA A. ONG
AARON JORDAN
Assistant U.S. Attorneys
200 N. Church Street
Las Cruces, New Mexico 88001
(575) 323-2391

I am the attorney for TRISTA SCHLAEFLI.  I have carefully discussed every part of this
agreement with my client.  Further, I have fully advised my client of her rights, of the elements
of the offense, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of
the relevant sentencing guidelines provisions, and of the consequences of entering into this
agreement.  To my knowledge, my client's decision to enter into this agreement is an informed
and voluntary one.

KEN DEL VALLE
Attorney for the Defendant

16

This agreement has been read to me in the language I understand best, and I have carefully discussed every part of it with my attorney.   I understand the terms of this agreement, and I voluntarily agree to those terms.   My attorney has advised me of my rights, of the elements of the offense, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement.   No promises or inducements have been given to me other than those contained in this agreement.   No one has threatened or forced me in any way to enter into this agreement.   Finally, I am satisfied with the representation of my attorney in this matter.

TRISTA SCHLAEFLI
Defendant

17